IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

ROBERT TRUJILLO and JOE TRUJILLO,

        Plaintiffs,

v.                                                                    No. CIV 03-995 BB/RHS

ROLDAN LARGE, personally and as an officer of
the Bernalillo County Sheriff's Department;
COUNTY OF BERNALILLO; and the
BERNALILLO COUNTY SHERIFF'S
DEPARTMENT,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of a motion for summary judgment filed by Defendants (Doc. 46). The Court has reviewed the submissions of the parties and the relevant law. For the reasons set forth below, the Court finds that the motion will be granted in part and denied in part.

This case arises out of the execution of a search warrant by Defendant Large and other deputies employed by Defendant Bernalillo County. Plaintiffs contend the manner in which the search warrant was executed was unreasonable, and therefore in violation of the Fourth Amendment. Plaintiffs also maintain the Defendants used excessive force in detaining them while the premises of Plaintiffs' home were being searched, also in violation of the Fourth Amendment. Finally, Plaintiffs claim the Defendants committed several common-law torts during the incident. Defendants ask for summary judgment on all claims.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present facts such that under the applicable law, a reasonable jury could find in its favor. *Id.* The Court will analyze the motion for summary judgment under this standard.

**Unreasonable Search Claim:** Plaintiffs claim that Defendants failed to comply with the "knock and announce" rule before using a battering ram to force open the door to Plaintiffs' residence. The "knock and announce" rule is of Constitutional dimension, as part of the requirement that a search be reasonable. *U.S. v. Gallegos*, 314 F.3d 456, 458 (10th Cir. 2002). In order to comply with this rule, officers executing a search warrant must first knock and announce their presence and purpose, then either be refused admittance or wait a reasonable amount of time before using force to enter the home. *Id.; U.S. v. Jenkins*, 175 F.3d 1208, 1213 (10th Cir. 1999). Defendants maintain the rule was complied with in this case, and point to the following evidence provided by Large: (1) he knocked on the door and announced that he was from the Sheriff's Department; (2) after a few seconds, he knocked again and again announced that he was with the Sheriff's Department, and had a warrant; (3) approximately 12 to 15 seconds after his first knock, when no one had opened the door, he or another officer used a battering ram to hit the door and

2

break the door jamb; and (4) because there was still resistance to the door opening, the battering ram was used again, then Large used his shoulder to push the door open. [Large affid., Exh. E, MSJ]

If this evidence was uncontradicted, Defendants might be entitled to summary judgment on the knock-and-announce claim. However, Defendants have failed to view the evidence in the light most favorable to Plaintiffs, as the Court must. Doing so, the Court finds there are several genuine issues of material fact necessitating denial of summary judgment. First, there is a question as to whether Deputy Large and the other officers were refused entry after they knocked on the door. Both Joe Trujillo ("Joe") and Robert Trujillo ("Robert") testified in their depositions that Joe said "Come on in" after the deputies either knocked on the door or rang the doorbell. [Exh. J, Reply, Joe depo. p. 114; Exh. D, Mot. to exclude Gillespie testimony, Robert depo. p. 121] Joe said or yelled this loudly enough that Robert, who was in another room, heard it and came out to answer the door, scolding Joe as he did so for saying "come in" without knowing who was at the door. [Exh. J, Reply, same page; Exh. D, Gillespie mot., pp. 121-22] This testimony raises an issue of fact as to whether the deputies were refused entry to the residence; if they were not, breaking the door in was a violation of the knock-and-announce rule. *Gallegos; Jenkins*.

There is also a question of fact as to whether the deputies adequately announced who they were before using the battering ram on the door. Both Robert and Joe testified they heard no such announcement, and Joe testified he would have heard it if there had been one. [Exh. J, Reply, pp. 130-32; Exh. F, MSJ, Joe depo. pp. 150-51; Exh. D, Gillespie mot., p. 122-23] Absent such an announcement, the knock-and-announce rule was violated. Although Defendants argue Joe's testimony must be discounted and ignored, it is not proper for the Court to do so on summary judgment.

Finally, there is a question of fact as to whether waiting 12 to 15 seconds before breaking the door in, under the circumstances of this case, was an adequate period of time to allow the deputies to assume they had been denied entry. As *Gallegos* and *Jenkins* discuss, there is no bright-line rule as to how many seconds officers must wait before it will be deemed they were denied entry. Given the factual conflicts surrounding the knocking or doorbell-ringing, the announcement or lack thereof, and the alleged permission given by Joe to enter, the Court cannot rule as a matter of law that the 12 to 15 seconds of delay in this case is constitutionally reasonable. For all the above reasons, summary judgment will be denied on this claim.[1]

**Excessive Force Claim:** Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id.* at 396-97. The Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the

---

[1] The Court recognizes that Plaintiffs have raised another argument under the Fourth Amendment, claiming that there were problems with the confidential informant ("CI") and the search warrant affidavit in this case. The only facts Plaintiffs can point to are the facts that the CI is a drug addict, he was not strip-searched before each controlled buy, and the description of Plaintiffs' house in the search warrant affidavit matches not Plaintiffs' house, but the house next door. The Court is not persuaded that any of this evidence raises a genuine issue of fact concerning the probable-cause question, but the wrong description of the house is troublesome. If there is a possibility the CI was making his controlled buys from the house next door, rather than Plaintiffs' residence, there might be an impact on the probable cause issue. *Cf. U.S. v. Dahlman*, 13 F.3d 1391, 1395-96 (10th Cir. 1993) (describing property to be searched by lot number, without reference to structures located on lot, insufficient to allow search of residence). For that reason, and because the rest of the Fourth Amendment claim is proceeding to trial, the Court will not eliminate the probable cause issue from the case at this time. However, the Court will likely not allow the issue to go to the jury if Plaintiffs do not adduce more persuasive evidence of a lack of probable cause supporting issuance of the search warrant.

crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Id.* at 396. Plaintiffs have alleged two separate instances of excessive force in this case: Robert claims that Defendant Large hit him on the head with his handgun at the time he entered the residence, and Joe claims he was manhandled and thrown on the floor by a deputy who has not been named as a defendant in this lawsuit.

As to Robert's claim, Defendants maintain no excessive force was used because Large's use of force was reasonable. They point to Large's assertion that he pushed Robert to the ground because Robert had been trying to hold the door shut against the officers' attempts to break into the residence. Large asserts that he did not deliberately strike Robert with his gun, and that if the gun hit Robert it was an accident that occurred during the pushing. [Exh. E, MSJ, Large affid.] In sum, Defendants maintain that Large was entitled to use force to control Robert because he was resisting the officers' entry into the residence, and that the accidental contact between the gun and Robert's head, if such contact did occur, does not rise to the level of unreasonable force.

Again, however, Defendants have failed to view the evidence in the light most favorable to Plaintiffs. Robert stated in his deposition that Large reached in through the partially opened door and hit him with the gun. [Exh. C, MSJ, Robert depo. p. 128] Joe corroborated Robert's account, saying that the deputy "reached over and hit Robert there" as soon as the door was opened. [Exh. F, MSJ, Joe depo. p. 149-50] According to the Trujillos' testimony, therefore, Large reached in after he had partially opened the door, and deliberately hit Robert in the head with his gun. The Court cannot say as a matter of law that such use of force, if it occurred as Robert and Joe described it, was constitutionally reasonable under the circumstances. This is especially true because Robert did not admit he was holding the door shut; instead, he stated that he was looking through the peephole and

5

may have been slightly leaning against the door when it was forced open. [Exh. C, MSJ, Robert depo. p. 126] Thus, there are genuine disputes of fact as to whether Robert was resisting the officers' entrance into the residence, as to whether Defendant Large deliberately hit Robert in the head with his gun, and as to whether it was necessary for Large to do so to prevent further resistance from Robert. Summary judgment will be denied as to Robert's claim of excessive force.

With respect to Joe's claim, the result is different. Joe maintains he was thrown roughly to the floor, even though he was not resisting the officers in any way. However, Defendant Large did not touch Joe, and the deputy who did has not been named as a defendant in the case. Plaintiffs contend there is still a "legal issue of whether the other defendants are still liable for the actions" of deputies unnamed as defendants. However, Plaintiffs cited no authority or facts indicating that Defendant Large, the County of Bernalillo, or the Sheriff's Department should be legally responsible for the actions of the deputy who threw Joe to the ground. The Court's review of the materials submitted by the parties has not provided any readily apparent reason to impute such liability to any of the named Defendants.[2] Summary judgment will therefore be granted on Joe's excessive-force claim.

**State-Law Claims:** As to all the state-law claims except the defamation claim, Defendants contend that Plaintiffs did not submit a timely notice under the New Mexico Tort Claims Act. Defendants rely on the allegations of Plaintiffs' complaint, pointing out that according to the

---

[2]For example, if there was evidence that Defendant Large saw the deputy throw Joe to the ground, had an opportunity to prevent it from happening, and did nothing, Large could be held liable because officers have a duty to prevent constitutional violations from occurring if they are able to do so. *See, e.g., Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). However, no such evidence has been presented to the Court. Furthermore, the "municipal" Defendants are not vicariously liable for the actions of the deputy, absent evidence of a failure to train deputies in the proper use of force, or authorization of the deputy's actions. Again, no such evidence has been proffered.

complaint the entry into Plaintiffs' residence occurred on June 28, 2001, and notice of Plaintiffs' claims was not given to Defendants until September 27, 2001. Since September 27 was 91 days after June 28, Defendants maintain the notice was one day late. *See* NMSA § 41-4-16 (requiring that written notice of a tort claim be provided within ninety days of the occurrence giving rise to the claim).

Plaintiffs raise three arguments in opposition to Defendants' position. First, they point out that the complaint was not a verified complaint, and they contend the allegations of the complaint cannot be used as facts supporting a motion for summary judgment. This contention is not correct. Allegations in a complaint, even if the complaint is not verified, are considered judicial admissions that are binding on the plaintiff. *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003). While it is possible to amend a complaint to change an allegation and thus retract the admission, Plaintiffs have not amended their allegation that notice was provided on September 27, 2001. In addition, Plaintiffs have submitted no evidence contradicting their allegation as to notice, or indicating notice was provided earlier. *Cf. Nat'l Labor Relations Bd. v. Merrill*, 388 F.2d 514, 519 (10th Cir. 1968) (petitioner was not bound by allegation in complaint where evidence showed allegation was incorrect, because complaint can be amended to conform to evidence where justice so requires). The Court therefore holds it was proper for Defendants to rely on Plaintiffs' allegation concerning the date of notice, for purposes of summary judgment.

Plaintiffs next argue that no facts have been presented as to when their injuries manifested themselves and were thus ascertainable. Again, however, the allegations of the complaint supply the necessary facts. As Defendants point out, the complaint alleges that the search of the residence, as

7

well as the accompanying property damage and battery, occurred on June 28, 2001. There is no allegation in the complaint indicating any reason why the Plaintiffs were not aware, on that date, that they had been injured.[3] The Court therefore cannot accept the argument advanced by Plaintiffs.

Plaintiffs also contend that they were excused from the written notice requirement because Defendants had actual notice. Plaintiffs argue that a supplemental report prepared by Defendant Large, after the incident, contained "facts and circumstances that were sufficient to put the defendants on notice of their potential liability..." Plaintiffs merely state this as a fact, without explaining what part of the report satisfies the actual notice requirement or how the report does so. The Court does not agree with Plaintiffs' argument. It is not enough for the agency to have actual notice of the occurrence itself; instead, the agency must have notice that litigation will likely be the result of the occurrence. *Lopez v. State*, 930 P.2d 146, 149-50 (N.M. 1996). There is nothing in Defendant Large's report that indicates litigation would likely result from the incident. The report indicates the deputies complied with the knock-and-announce rule; it also indicates Robert was thrown to the ground because he had been leaning against the door trying to prevent the deputies from entering the residence. [Exh. B, Gillespie mot.] Although the report does state that Robert received a laceration to his head as a result of the incident, it says nothing about how that laceration was inflicted. From reading the report, it would be impossible to determine that Robert was hit on the head with a gun,

---

[3]The Court is aware that Plaintiffs may claim Robert suffered brain damage as a result of the blow to his head, which was not immediately diagnosed. Even if Plaintiffs were not aware of the full extent of Robert's injuries at the time of the search, however, the notice period began to run when Plaintiffs knew Robert had been hit in the head. *See Bolden v. Village of Corrales*, 809 P.2d 635, 636 (N.M. App. 1990) (limitations period of Tort Claims Act begins to run when an injury is apparent, even if full extent of injury is not known at that time); *Emery v. Univ. of New Mexico Med. Center*, 628 P.2d 1140, 1145 (N.M. App. 1981) (due to similarity in language between notice provision and limitations provision of Tort Claims Act, same standard applies in determining date the notice period began to run).

or that any other state-law tort might have been committed by the deputies. For this reason, the report does not provide actual notice that a lawsuit would likely be filed as a result of the incident.

With respect to the claim for defamation, summary judgment is appropriate for a different reason. Joe claims that a red-headed lieutenant telephoned an individual named Jack at the detention center, and told Jack that Joe was providing drugs to the female prisoners Joe had been transporting; that Jack then called Joe's boss; and that Joe's boss temporarily removed Joe from the prisoner-transportation detail as a result. [Exh. F, MSJ, Joe depo. pp. 25-34] This testimony, however, does not raise an issue of fact as to the defamation claim, for several reasons.

First and foremost, Joe's evidence of these alleged conversations is complete and total hearsay, obtained second-hand or even third-hand. [Exh. J, Pltf. Resp. to MSJ, Joe depo. p. 30] Hearsay evidence such as this is "not suitable grist for the summary judgment mill." *Wright-Simmons v. Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir.1998). Therefore, it cannot be considered in deciding whether a genuine issue of material fact is present.

In addition, the "red-headed lieutenant" has not been identified or named as a defendant in this case, and there is no evidence that anyone else made any statements about Joe's alleged drug-distribution activity. Since there is no evidence the lieutenant was acting in the course and scope of his employment when he allegedly called Jack at the jail, there is no basis for imposing vicarious liability on Defendant County for the lieutenant's actions. *See, e.g., Ocana v. American Furniture Co.*, 91 P.3d 58, 70 (N.M. 2004) (employer is liable for employee's torts committed within the course and scope of his or her employment). Thus, there is no Defendant in this case who could be held liable for the alleged statements made by the unidentified lieutenant.

9

Plaintiffs also maintain, without any argument in support, that "Joe was defamed by the raid that communicated to his neighbors that he was selling drugs from his home." This assertion of defamation fails because Plaintiffs have not presented a shred of evidence satisfying many of the elements of defamation. Two examples will suffice. First, there is no evidence any neighbor actually saw the raid; without such evidence, the Court cannot find the "communication" (assuming the raid itself can constitute a communication) was published to anyone. UJI 13-1002 (listing elements of prima facie case of defamation, including the requirement that the communication be published to a third party). Second, there is no evidence anyone seeing the raid would have interpreted the raid to mean that Joe was accused of selling drugs, so the raid cannot be said to have communicated that particular "statement of fact" to anyone. *Id.* (communication must contain a statement of fact). The raid itself, therefore, cannot be the basis of a defamation claim against Defendants.

**Sheriff's Department as Defendant:** Defendants argue that the Bernalillo County Sheriff's Department is not an entity subject to suit. Plaintiffs did not respond to this argument in their response brief. The Court will therefore dismiss the Sheriff's Department from the case.

**Conclusion:** Based on the foregoing, the Court will grant summary judgment to Defendants on Plaintiffs' state-law claims and on Joe's claim of excessive force. The Court will deny summary judgment as to the unreasonable-search claims and Robert's claim of excessive force. Finally, the Court will dismiss all claims against the Bernalillo County Sheriff's Department.

## ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendants' motion for summary judgment (Doc. 46) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 24th day of August, 2004.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
Houston Ross

**For Defendants**:
William D. Slease
Brett R. Loveless